Judgment will be entered for the plaintiff in the amount of $13,505.59 and the counterclaim of defendant is dismissed.

It is so ordered.

HOLTZOFF, Judge, sitting by designation.

JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.

**Edward Jay SCHREMP**

v.

**UNITED STATES.**

No. 279–54.

United States Court of Claims.

Oct. 8, 1958.

Thomas M. Gittings, Jr., Washington, D. C., for plaintiff.

Thomas J. Lyndon, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

LITTLETON, Judge.

Plaintiff, a former civilian employee of the Navy Department, sues to recover the costs of certain transportation and other charges alleged to be due him on account of certain travel undertaken by himself and his dependent wife.

While plaintiff was employed at the Massachusetts Institute of Technology in 1946, he applied for appointment as a physicist in the London, England, branch of the Navy Department's Office of Research and Inventions. He was advised in July that the London branch office was recommending his appointment and on July 9, 1946, the plaintiff informed that office that he would accept the appointment and that his services would be available from September 1, 1946. It was deemed desirable to utilize plaintiff's services in the United States prior to the commencement of his duties overseas and accordingly he was given a personal service contract under which he was to perform temporary employment for the Federal Government which would involve travel from place to place in the United States at Government expense. In connection with plaintiff's appointment to the London position in which he would serve for a minimum period of 18 months, a so-called employment agreement was prepared in

Washington and dated September 24. It contained the following paragraphs with respect to authorized transportation:

"19. You will report to the Air Transport Command Office, Washington National Airport, Wash., D. C., for the necessary transportation via ATC plane leaving Wash., D. C. on 4 October 1946 for Paris, France. Priority Number APR–3–409068–USN–OCT has been assigned you for this travel.

"20. The Office of the Naval Attaché, Paris, France will furnish you the necessary Government Air Transportation from Paris, France, to London, England and will note same herein.

"21. You will be allowed 65 pounds baggage on board Government plane.

"Under the authority of the Secretary of the Navy."

The above employment agreement, or letter of appointment, was never actually handed to the plaintiff but he seems to have known of its existence.

The Employment Branch, Office of Industrial Relations (OIR) in Washington, D. C., had the responsibility for processing plaintiff's appointment to the London position and issuing the necessary travel orders. Although the record is not entirely clear on this point, there appears to have been some feeling on the part of the Government officials that plaintiff's presence in England as early as October was desirable, if not necessarily urgent, and accordingly, since no reservation for travel on a Government ship was available earlier than November 14 or 15, 1946, the employment branch office decided to secure reservations on a Government airplane for the plaintiff early in October, and the order to travel by air under a specified priority was included in the above mentioned employment agreement covering plaintiff's London appointment.

While plaintiff was engaged in performing temporary duties for the Government in September of 1946, he was notified that a reservation had been made for travel to London by Government air transportation on October 1, 1946. Plaintiff was ill at the time he received such notice and he advised the proper officials in Washington that he would be unable to fly to London at that time. Another reservation by air transportation was made for plaintiff involving departure on October 4, 1946, and plaintiff again advised the Washington officials that he still did not feel able to undertake air transportation. At that time plaintiff was present in Washington and suggested to the official in charge, a Mr. Weaver, that he was willing to go to England by commercial vessel if the Government would arrange to reimburse plaintiff for so much of the transportation as would have been in excess of the expense to the Government of sending plaintiff by Government vessel. Plaintiff was advised that there were no funds then available to pay for commercial ship transportation and that if plaintiff went to London by a commercial ship he would have to bear the cost of his transportation. Again there is dispute as to whether or not Mr. Weaver verbally assured plaintiff that the Government would reimburse plaintiff in part as requested, but the record as a whole appears to bear out the Government's position that the Government made no such actual commitment to plaintiff. When the plaintiff, on October 4, advised Mr. Weaver that he could not travel by air on that day, Mr. Weaver directed the Office of Industrial Relations to cancel the employment agreement of September 24. The London employment agreement was canceled with the following notation:

"Schremp refused Govt trans via air—says he'll pay his own way—commercial—so he is going without orders & will be appointed when he gets there—has been promised commercial boat around 4 Nov 1946—had 2 cancel 2 plane reservations in his case"

If the employment agreement had not been so canceled, the agreement, or appointment letter, would have been hand-

ed to the plaintiff and would have constituted authority for travel. Despite the fact that plaintiff may not have been told of the cancellation of the agreement, or letter of appointment to the London position, he does not deny the fact that he never received such an agreement or letter prior to his departure for England.

On October 24, 1946, plaintiff filed a memorandum directed to the personnel officer requesting that his personal service contract covering the temporary duties on which he had been engaged for the Government in the United States be canceled as of the close of business on October 31, 1946, and stating that he was sailing on November 1 in order to accept an appointment in the London branch office of the Navy Department's Office of Research and Inventions. On that same day plaintiff was given travel orders authorizing travel under the personal service contract covering duties in the United States and authorizing travel by the plaintiff to various cities ending at New York City. Paragraph 1(b) of these orders read as follows:

"These orders will be terminated in New York City, New York at the time of your embarkation to London, England *to accept an appointment with the Navy there.*" (Italics supplied.)

On November 1, 1946 plaintiff sailed for England on the Ile de France, a French vessel. At that time the plaintiff was not in the employ of the United States under either the temporary personal service contract or under the contract for employment in London. Furthermore, there were not then in existence any written travel orders authorizing plaintiff's travel to London in November, 1946. Accordingly, plaintiff paid for his own passage and for the transportation of his automobile. Upon plaintiff's arrival in England he reported to the Naval Attaché who telegraphed the Assistant Secretary of Navy in Washington to the effect that plaintiff had arrived with no orders from the Office of Industrial Relations and requesting advice as to whether or not his

salary should be effective on the date of his departure from New York or upon the date of his reporting in London on November 8. Subsequently a reply from Washington advised the Naval Attaché that the plaintiff's appointment should be handled in London effective on the date he reported for duty in London. Plaintiff was appointed on November 18 to the London position and the appointment was made effective retroactively to November 8, 1946. The appointment was made on the understanding that plaintiff would serve for a period of 18 months, or such part of that period as his services might be required.

On June 8, 1948, the plaintiff requested the assistance of the Assistant Naval Attaché for Research in London in securing reimbursement for his transportation from New York to London in 1946. His written request was forwarded to the Chief of Naval Research in Washington who denied the request on the ground that plaintiff was not an employee of the Navy Department, under contract or otherwise, at the time he departed from New York for London in 1946 and that accordingly it could only be concluded that his travel was performed on his own initiative and was not the responsibility of the Navy Department. By this time plaintiff had completed more than the required 18 months of service in London.

On June 22, 1948, plaintiff requested, in writing, 20 days sick leave to begin on July 2 and end on August 1 for the stated purpose of having a physical examination by his personal physician in the United States. Permission was granted, but with the qualification that at the completion of plaintiff's leave on August 2, 1948 he should report back to the London office to resume his regular duties. Accompanied by his wife (an English woman whom he had married in 1947 in England), plaintiff returned to the United States aboard the United States Lines' SS. America, which arrived in New York on July 8.

While on sick leave in the United States, plaintiff wrote to the Assistant

Naval Attaché for Research in London stating that he would like to continue his work with the London branch office if the work could be performed on the Continent rather than in London, and that if this could not be done, he asked that his employment be terminated on August 1, 1948. On August 4, 1948, plaintiff was advised by a London official of the Navy Department that his request to continue his work from a Continental base could not be complied with and that his contract was being terminated. Apparently some differences of opinion had existed for sometime between the plaintiff and the London official in question, although the value and excellence of plaintiff's services were never questioned by that official or by the Navy Department.

On August 27, 1948 plaintiff's employment for the London office was terminated effective at the close of business on that day.

Plaintiff's original claims have been reduced to the following: (1) Reimbursement for his own boat passage from the United States to England in 1946, and for the return passage in 1948 for himself and for his wife in 1948; (2) reimbursement for baggage costs incurred and paid by plaintiff for transportation and passage between Southampton and London, and return, and from New York to Hyannisport, Massachusetts in 1948, and (3) reimbursement for transportation between London and Southampton and between New York and Hyannisport, Massachusetts in 1948. Plaintiff urges that under the circumstances of his case and under the provisions of Section 7 of the Act of August 2, 1946, 60 Stat. 808, as amended, 5 U.S.C.A. § 73b–3 (1952 ed.) he is entitled to reimbursement for the cost of his transportation in 1946 and 1948, and that of his wife and of his baggage in connection with his employment in the London office. Section 7 provides as follows:

"Appropriations for the departments shall be available, in accordance with regulations prescribed by the President, for expenses of travel of *new appointees,* expenses of transportation of their immediate families and expenses of transportation of their household goods and personal effects *from places of actual residence at time of appointment to places of employment outside continental United States,* and for such expenses on return of employees from their posts of duty outside continental United States to the places of their actual residence at time of assignment to duty outside the United States: *Provided,* That such expenses shall not be allowed new appointees unless and *until* the person selected for appointment *shall agree in writing* to remain in the Government service for the twelve months following his appointment, unless separated for reasons beyond his control." [Italics supplied.]

If plaintiff had been a "new appointee" at the time he departed from New York to England in 1946, he would have been entitled to be reimbursed for the cost of his transportation to England in 1946 and to the cost of the transportation of himself and his wife from England to the United States in 1948. It is defendant's contention that under the facts in this case plaintiff was not a new appointee nor an appointee at all at the time of his departure from New York on November 1, 1946, nor was he in possession of any valid written or verbal authorization to travel at Government expense. The facts of record bear out the contention of defendant that plaintiff was not an appointee to a Government position at the time he undertook the journey to London from New York in November of 1946.

As to whether or not plaintiff had valid verbal authorization to travel to London in 1946 at Government expense, there is some dispute as to whether plaintiff had verbal orders directing him to proceed to England by way of commercial transportation on November 1, 1946. Assuming for the moment that

plaintiff did have such verbal authorization, plaintiff urges that under section I-7 of the Standardized Government Travel Regulations, as amended January 30, 1942, he is entitled to reimbursement because under that regulation physical possession of written travel orders prior to travel is not a necessary condition of reimbursement, citing Maskal v. United States, 123 Ct.Cl. 230. Section I-7 of the above regulations provided as follows:

"7. Approval—Whenever travel has been performed and expense incurred on account of an emergency or without prior authority,[1] the travel voucher must be approved by the head of the department or independent establishment, or by an official designated by him for this purpose, and such approval shall constitute the authority for the travel. * * *."

We are of the opinion that the above regulation does not support the plaintiff's contention that he was traveling under valid verbal authority. While it is true that under the language of that regulation *written* travel orders prior to the time the travel is performed is not a necessary condition to reimbursement, subsequent approval by some responsible official of verbal travel orders must be secured and such subsequent approval was not obtained in the instant case. Although, as pointed out by plaintiff, his travel to London in 1946 resulted in a benefit to the defendant, that fact does not impose upon the Government an obligation to reimburse the plaintiff for the cost of his transportation which was never authorized or approved by the Government, nor in fact required by the Government. In the Maskal case, supra, relied on by the plaintiff, a warrant machinist in the United States Navy, was required to travel without written orders in 1942. A year later, however, the verbal authorization for such travel was approved by the Chief of Naval Personnel and the court held that because the verbal travel orders were later approved in accordance with paragraph 3, Article 2508, U. S. Navy Travel Instructions, the warrant machinist was entitled to be reimbursed for the expense of such travel. In view of the subsequent approval of the verbal travel orders in the Maskal case, the ruling therein is of no help to the instant plaintiff.

Plaintiff also relies on a statement appearing on his special passport issued by the State Department in connection with his travel to London. The statement in question was "is proceeding to the British Isles on official business for the Navy Department." We are unable to agree with plaintiff that the issuance of this passport, and its use by the plaintiff, supports his position that he was proceeding to London under official orders.

We have been unable to find any statute or regulation, and none have been called to our attention, which permits or requires that a person whose appointment is made outside the Continental United States, be paid for the expense of travel and transportation to and from the United States in connection with such overseas appointment. We therefore conclude that plaintiff is not entitled to recover. In view of this disposition of the case, it is unnecessary to discuss the other defenses of the Government, including the partial defense of the Statute of Limitations. Plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN, and WHITAKER, Judges, concur.

---

1. Authority is defined in Section I-5, Standardized Government Travel Regulations, as amended, January 30, 1942, as follows:

"*Form of authority*—All travel shall be either authorized or approved in writing by the head of the department, or by an official to whom such authority has been properly delegated."